UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROLLINE TIMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-01597 JAR |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Rolline Timmons's applications for disability insurance benefits under Title II and supplemental social security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

### I. Background

On January 15, 2014, Timmons protectively filed an application for disability insurance benefits and supplemental social security income, alleging disability beginning April 1, 2013,[2] due to a history of Hepatitis C and affective disorder. (Tr. 23-25.) After her application was denied at the initial administrative level, Timmons requested a hearing before an administrative law judge ("ALJ"). (Tr. 6.) A hearing was held on March 13, 2015. (Tr. 23.) Thereafter,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] The ALJ misstates April 30, 2013, as the onset date. *Compare* (Tr. 23) *with* (Tr. 123).

Timmons underwent a consultative examination. (Tr. 629-640.) The ALJ issued a written decision denying Timmons's application on June 2, 2015. (Tr. 23-27.) On August 8, 2016, the Appeals Council of the Social Security Administration denied Timmons's request for review. (Tr. 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000).

Timmons filed this appeal on October 12, 2016. (Doc. 1.) The Commissioner filed an Answer. (Doc. 12.) Thereafter, Timmons filed a Brief in Support of her Complaint (Doc. 19), and the Commissioner filed a Cross Brief in Support of the Answer (Doc. 24).

## II. Facts

The Court adopts Timmons's Statement of Facts (Doc. 19 at 1-8), as supplemented by the Commissioner's Response to Timmons's Statement of Facts (Doc. 24-1), and the Commissioner's Statement of Additional Facts (Doc. 24-2). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Brantley v. Colvin*, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). Third, the claimant must establish that her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then she is per se disabled without consideration of her age, education, or work history. *Id.*

Disability claims based on mental disorders are evaluated in essentially the same manner as claims based on physical impairments. If the mental impairment is severe, the ALJ must determine whether it meets or exceeds and of the Listings of mental impairments. The Listings consist of three sets of "criteria"—the paragraph A criteria (a set of medical findings), paragraph B criteria (a set of impairment-related functional limitations), and paragraph C criteria

3

(additional functional criteria applicable to certain L:istings). The paragraph A criteria substantiate medically the presence of a particular mental disorder. The paragraphs B and C criteria describe the impairment-related functional limitations that are incompatible with the ability to work. There are four areas in which the ALJ rates the degree of functional limitation: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation (the "paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3). A claimant can satisfy the paragraph C criteria by showing: (1) extended episodes of decompensation; (2) a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or (3) a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). The paragraph C criteria are assessed only if the paragraph B criteria are not satisfied. If the claimant satisfies the A and B, or A and C criteria, she will be considered disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also* 20 C.F.R. § 404.1520a (detailing evaluation of mental impairments).

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work by comparing the claimant's RFC with the physical and mental demands of the past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the

4

claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if she can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that she is disabled. *Brantley*, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Andrews v. Colvin*, 791 F.3d 978, 983 (8th Cir. 2015); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

### IV. Decision of the ALJ

The ALJ determined that Timmons met the insured status requirements of the Social Security Act through December 31, 2018, and had not engaged in substantial gainful employment since April 1, 2013, the alleged onset date of disability.[3] (Tr. 25.) As relevant to this appeal, the ALJ determined that Timmons had the severe impairments of a history of Hepatitis C and affective disorder. (*Id.*)

However, the ALJ noted that there was no evidence that Timmons's Hepatitis C caused chronic liver disease with any of the listed complications that would require a finding of disability. (Tr. 26 (citing 20 C.F.R. Pt. 404, App. 1 Subpt., § 5.05).) Likewise, the ALJ determined that Timmons's mental impairment did not mandate a finding of disability, finding that Timmons had no restriction in activities of daily living, no problems performing personal care tasks, no difficulty with cooking, cleaning, shopping, or driving, and maintains a driver's license. (Tr. 26.) The ALJ found that Timmons has moderate difficulties in social functioning due to ongoing depression exacerbated by stress from parental duties, financial struggles, and familial issues. (*Id.*) Likewise, the ALJ noted a history of difficulty falling asleep, feelings of

---

[3] *See* footnote 2, *supra*.

guilt, and suicidal intent. (*Id.*) In addition, the ALJ noted that Timmons had been diagnosed with bipolar disorder that made her easily distracted and caused, among other symptoms, difficulties paying attention and concentrating, pressured and rapid speech, and impulsivity. (Tr. 26-27.) However, the ALJ determined that Timmons was able to control those symptoms with prescription medication, that Timmons regularly attends church, and that she maintains relationships with family and friends. (Tr. 27.)

As to concentration, persistence, and pace, the ALJ determined that Timmons had moderate difficulties, manifested as trouble staying on task, being easily distracted, and struggling with memory, as recorded in progress reports from past psychological treatment. (*Id.*) The ALJ noted, however, that Timmons's mental status examination indicated that her simple attention was grossly intact, her responses to questions were relevant and coherent, her mental processes were logical, sequential, and goal-directed, and that her mood was normal. (*Id.*)

After considering the entire record, the ALJ determined that:

> [Timmons] has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967 except [s]he can perform simple unskilled (SVP 1 or 2) work. [She] cannot perform public contact work. [She], moreover, is incapable of performing more than superficial contact with supervisors and co-employees.

(Tr. 28.) The ALJ concluded that the record supported Timmons's claims that she suffered from the symptoms she described but found that her claims as to their intensity, persistence, and limiting effects were not credible. (Tr. 30.)

The ALJ further found that Timmons could not return to her past work as a nurse assistant but determined that there are jobs that exist in significant numbers in the national economy that she can perform, citing Social Security Medical-Vocational Rule 201.28, 20 C.F.R. Pt. 404, specifically: *Inspector and Hand Packager* (Dictionary of Occupational Titles ("DOT")

7

559.687-074). (Tr. 36.) The ALJ therefore concluded that Timmons had not been under a disability from April 1, 2013[4]—the alleged onset date—through the date of his decision, June 2, 2015. (Tr. 36-37.)

## V. Discussion

Timmons argues that "[t]he ALJ erred by failing to consider [Timmons's] ability to perform work-related mental activities 'on a regular and continuing basis'" and "by failing to include any specific restrictions on [Timmons's] ability to maintain concentration, persistence, or pace in his RFC determination." (Doc. 19.) Put simply, Timmons argues that the ALJ's RFC does not adequately consider her mental limitations. The Court disagrees.

The claimant's RFC is defined as the most she can do despite the combined effects of all of her credible limitations. *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including her testimony regarding symptoms and limitations, her medical treatment records, and the medical opinion evidence. *See Voegtlin v. Colvin*, No. 4:11CV1980 HEA, 2014 WL 651378, at *4 (E.D. Mo. Feb. 19, 2014) (citing *McCoy*, 648 F.3d at 605). It is the claimant's burden, not the Commissioner's, to prove her RFC. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

Timmons argues that the ALJ's RFC determination fails to account for her moderate limitations interacting with supervisors and coworkers, marked limitations responding appropriately to work situations and changes in routine, and moderate-to-severe limitations sustaining concentration and persistence in work tasks. (Doc. 19 at 11.) Those limitations are based largely on Michael T. Armour, Ph.D.'s consultative examination conducted after the hearing. (*Id.* at 10-11.) Timmons argues that Dr. Armour's assessment is corroborated by her

---

[4] *See* footnote 2, *supra*.

8

substantial medical record. (*Id.* at 11-13.) Respondent argues that the ALJ's RFC determination incorporates Timmons's verifiable limitations. She notes that the ALJ was not persuaded that Timmons's limitations were as severe or debilitating as described.

The Court concludes that the ALJ's RFC determination, incorporating the ALJ's findings regarding Timmons's limitations in concentration, persistence, and pace, is supported by substantial evidence. Timmons asserts that she has moderate difficulty interacting appropriately with supervisors and coworkers. (Doc. 19 at 11.) The ALJ's RFC expressly limits her to "[no] more than superficial contact with supervisors and co-employees." (Tr. 28.) Indeed, the *Inspector and Hand Packager* occupation requires no significant instruction taking or interaction with others. DOT 559.687-074. What is more, the ALJ cited record evidence indicating that Timmons interacts with others on a regular basis, including time spent with friends, at church, and on social media. (Tr. 32.) A claimant's subjective complaints may be discounted if there are inconsistencies in the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 558-59 (8th Cir. 2011). Lastly, the ALJ cited medical evidence indicating that many of the symptoms that make interacting with others difficult—depression, mood swings, impulsivity—are well controlled by medication. (Tr. 31.) Impairments that are amenable to control by treatment or medication are not disabling. *See Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014)

Timmons asserts that she has marked limitations with responding to work situations or changes in routine. (Doc. 19 at 11.) The ALJ accounted for those limitations by crafting and RFC that limits Timmons to simple unskilled work. (Tr. 28.) The *Inspector and Hand Packager* occupation is described by the DOT as repetitive, meaning Timmons is unlikely to face frequent or significant changes to her work routine. DOT 559.687-074. Likewise, lack of significant interaction with supervisors or coworkers and the lack of significant need to take instructions

9

reduces the likelihood that Timmons will be called upon to respond to unexpected or complex tasks. *Id.*

Finally, Timmons notes that Dr. Armour found that she has moderate, and at times, severe limitations with concentration and persistence, for which the ALJ's RFC determination fails to account. (Doc. 19 at 11.) As an initial matter, the ALJ determined that Dr. Armour's findings were internally inconsistent. Specifically, the ALJ noted that Timmons's long- and short-term memory was grossly intact (she was able to give a detailed personal history and was able to recall three unrelated words five minutes later); she described her reading ability as "great;" she had worked as a trained healthcare provider very near to the alleged onset date, without any significant deterioration in her mental condition; and her racing thoughts and pressed reasoning were well-controlled by medication. (Tr. 20-34.) Thus, the Court concludes that the ALJ's decision to grant some, but not substantial, weight to Dr. Armour's examination was supported by the evidence. *See Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (holding that a consultative source does not, by itself, constitute substantial evidence on the record as a whole but may be considered along with other evidence in the record); *see also Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007).

Moreover, the ALJ's RFC determination accounts for Timmons's difficulties with focus. First, it limits Timmons to "simple, unskilled (SVP 1 or 2) work." (Tr. 28.) While the DOT does not assign specific concentration and pace measurements to occupations, jobs assigned Specific Vocational Preparation ("SVP") levels 1 and 2 are very easy to learn and can be mastered with less than one month of training. DOT App. C. Likewise, the *Inspector and Hand Packager* occupation requires a low level of reasoning: one need only "[a]pply commonsense

understanding to carry out detailed but uninvolved written or oral instructions" and solve simple problems "involving a few concrete variables in or from standardized situations." DOT 559.687-074. In addition, the job demands only basic mathematical skills—"Add and subtract two digit numbers"; "multiply and divide 10's and 100's by 2, 3, 4, 5"; "basic arithmetic operations with coins as part of a dollar"; "operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound"—and simple language skills—"Passive vocabulary of 5,000-6,000 words"; "Read instructions for assembling model cars and airplanes"; "Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs"; "Speak clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses." *Id.* Finally, the job requires no significant instruction taking or interaction with others and consists of repetitive or short-cycle work. *Id.*

These requirements are all within Timmons's abilities as determined by the ALJ. Put simply, the ALJ's RFC determination was supported by substantial evidence and appropriately incorporated Timmons's evidence-based limitations with concentration and pace.

## VI. Conclusion

For the foregoing reasons, the Court finds there is substantial evidence in the record to support the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Rolline Timmons's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 29th day of March, 2018.

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**